**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Northern Division)**

| | | |
|---|---|---|
| **TIMOTHY BROCKINGTON** | * | |
| **Plaintiff** | * | |
| **v.** | * | **CASE NO: 1:08-CV-01713-CCB** |
| | * | |
| **ANTWAN LAMONT BOYKIN**, *et al.* | * | |
| **Defendants** | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

**DEFENDANTS' MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION TO STRIKE PLAINTIFF'S EXPERTS**

Defendants, by and through their attorneys, hereby submits this Memorandum in Support of its Motion to Strike Plaintiff's Expert Reports of Richard Callery, M.D. and Dr. Keith A. Hunter, M.D.

**I.    INTRODUCTION AND FACTUAL BACKGROUND**

The Court is well aware of the factual background underlying this civil rights case under 42 U.S.C. §1983 ("§1983"), and it will not be repeated here. The current motion and dispute involves Plaintiff's persistent refusal to follow the requirements of Fed. R. Civ. P. 26(a)(2) ("Rule 26(a)(2)") governing expert disclosures.

The Scheduling Order has been modified several times to extend the deadline for Rule 26(a)(2) disclosures throughout the course of this litigation.   *See ECF Paper Nos. 106, 126, 138, 148.*   For instance, this Court's Scheduling Order of January 13, 2010 required Plaintiff to submit his Rule 26(a)(2) expert disclosure by April 7, 2010.   *See ECF Paper No. 73.*

1

In April of 2010, Plaintiff filed Rule 26(a)(2) disclosures for Richard Callery, M.D. and Keith A. Hunter, M.D.  Neither disclosure included the opinions or conclusions of the expert. Nevertheless, Defendants' agreed to another extension of the Scheduling Order.  The Court's Scheduling Order issued on January 18, 2012 required Plaintiff to make his Rule 26(a)(2) expert disclosures by March 12, 2012.  *See ECF Paper No. 138*. On March 12, 2012, Plaintiff failed to file amended reports, to include their opinions, for either Dr. Callery or Dr. Hunter.  *See Exhibit A*, *Letter from Glenn T. Marrow to Christopher Thatch, dated May 10, 2012*; *Exhibit B, Letter from E-mail from Christopher Thatch to Glenn T. Marrow and Troy Priest*, *dated May 2, 2012, p. 2.*

On May 2, 2012, fifty-one (51) days after the deadline to file Rule 26(a)(2) disclosures had past, Plaintiff sent Defendants correspondence indicating that they had intended to file their experts reports on the supplemental deadline of May 7, 2012.  *See Exhibit B, Letter from E-mail from Christopher Thatch to Glenn T. Marrow and Troy Priest*, *dated May 2, 2012, p. 2.*  Plaintiff indicated, however, that the expert reports would not be available by then and another extension of the discovery deadline.  *See Id.* Defendants consented to the extension, but explained to Plaintiff that his interpretation of the initial disclosure requirement under Rule 26(a)(2), as well as the supplemental disclosure deadline under Rule 26(e) deadline was incorrect.  *See Exhibit A*, *Letter from Glenn T. Marrow to Christopher Thatch, dated May 10, 2012*.  Most importantly, Defendants consented to the extension upon the contingency that should the Court accept the new proposed scheduling order, that Plaintiff would served complete reports in compliance with Rule 26 (a)(2) within the new applicable deadlines. *See Id.*

The Court accepted the joint motion to extend the discovery deadline and issued a new order, dated May 29, 2012, requiring Plaintiff to submit expert disclosure under Rule 26(a)(2) by August 17, 2012. *See ECF Paper No. 148.*  On August 17, 2012, Plaintiff's legal counsel contacted legal counsel for the Defendants and stated that they were having some difficulties getting a signature from one of his experts, Dr. Callery, and Plaintiff requested a short extension till Monday, August 20, 2012 to file his Rule 26(a) disclosures for Dr. Callery. *See Exhibit C, E-Mail from Mark Lenz to Glenn T. Marrow dated August 17, 2012.*  Defendants' agreed to the short extension of time.

On  August 17, 2012 at 11:55 p.m., Plaintiff served, via electronic mail, the expert report of Dr. Keith Hunter and John Meiklejohn. *See Exhibit D, E-mail Correspondence from Mark Lenz, dated August 17, 2012.*  On August 20, 2012, Plaintiff served, by electronic mail, the expert report of Dr. Richard Callery. *See Exhibit E, E-mail Correspondence from Mark Lenz, dated August 20, 2012.*

To Defendants' surprise, the emailed reports did not comply with Rule 26(a)(2) in that the they did not contain any reports related to the examinations referenced in the reports.  Defendants waited for the paper versions of Plaintiff's expert reports to arrive by U.S. Mail, in the hopes that they would contain attachments. To Defendants' disappointment, however, the Plaintiff's paper versions of the report were also deficient.

Furthermore, upon closer inspection of the expert reports, Defendants also discovered that they were deficient in other ways.  Significantly, although the amended reports for Drs. Callery and Hunter included their opinions, their respective reports did not include any discussion of their basis or reasoning to support their conclusions, as required by Rule 26(a)(2). *See Exhibits F & G, Expert Reports of Drs Hunter and*

*Callery*. Nor did the reports explain the methodology employed by the expert to support the conclusions, which also is required by Rule 26(a)(2). *See Id.*

At no time did counsel for the Plaintiff indicate that the reports they were submitting would be deficient in anyway. Nor did Plaintiff's counsel request any extension to provide further supplementation of the reports in order to comply with Rule 26(a).

These deficiencies have made it impossible for Defendant's experts to properly rebut the opinions asserted by Drs. Callery and Hunter because any assessment of the methodology they employed would be pure speculation. Furthermore, the deficiencies in these reports make it impossible for the Defendants to properly depose the experts on the bases of their opinions.

Accordingly, because the Plaintiff has failed to provide Defendants with expert disclosures that comply with the requirements of Rule 26(a)(2) within the deadline set by the Court's Amended Scheduling Order, and because Plaintiff's failure to comply with Rule 26(a)(2) has severely prejudiced Defendants' ability to defend this case, the Court should now preclude Drs. Callery and Hunter from testifying and offering expert opinions in this matter.

## II.    LEGAL ARGUMENT

### A.    Plaintiff's Expert Reports of Dr. Richard Callery and  Should Be Stricken Because They Do Not Comply With Rule 26(a)(2) And The Deadline In The Amended Scheduling Order for His Rule 26(a) Disclosure Has Expired.

This Court's Amended Scheduling Order required Plaintiff to comply with Rule26 (a)(2) by August 17, 2012. *See ECF Paper No. 148.* Rule 26(a)(2), in clear and

unambiguous language,  requires a party to disclose the identity of any person who may

be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of

Evidence:

> RULE 26. DUTY TO DISCLOSE; GENERAL PROVISIONS
> GOVERNING DISCOVERY
>
> (a) *Required Disclosures*.
> …
>
> (2) *Disclosure of Expert Testimony*.
>
> (A) *In General.* In addition to the disclosures required by Rule
> 26(a)(1), a party must disclose to the other parties the identity of
> any witness it may use at trial to present evidence under Federal
> Rule of Evidence 702, 703, or 705.
>
> (B) *Witnesses Who Must Provide a Written Report.* Unless
> otherwise stipulated or ordered by the court, this disclosure must
> be accompanied by a written report—prepared and signed by the
> witness—if the witness is one retained or specially employed to
> provide expert testimony in the case or one whose duties as the
> party's employee regularly involve giving expert testimony. The
> report must contain:
>
>> (i) a complete statement of all opinions the witness will
>> express and the basis and reasons for them;
>> (ii) the facts or data considered by the witness in forming
>> them;
>> (iii) any exhibits that will be used to summarize or support
>> them;
>> (iv) the witness's qualifications, including a list of all
>> publications authored in the previous 10 years;
>> (v) a list of all other cases in which, during the previous 4
>> years, the witness testified as an expert at trial or by
>> deposition; and
>> (vi) a statement of the compensation to be paid for the
>> study and testimony in the case.

Fed. R. Civ. Proc. 26(a)(2)(A)-(B) (Lexis 2012).

In turn, Rule 37(c) of the Federal Rules of Civil Procedure sets forth the mandatory sanctions associated with a party's failure to disclose pertinent information during discovery. In pertinent part, the Rule states as follows:

> RULE 37. FAILURE TO MAKE DISCLOSURES OR TO COOPERATE IN DISCOVERY; SANCTIONS.
> …
>
> (c) *Failure to Disclose, to Supplement an Earlier Response, or to Admit*.
>
> (1) *Failure to Disclose or Supplement.* If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>
> > (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
> > (B) may inform the jury of the party's failure; and
> > (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)–(vi).

Fed. R. Civ. P. 37(c)(1)(A)-(C) (Lexis 2012).

Indeed, as the Fourth Circuit has previously stated in interpreting the expert witness disclosure requirements, "every litigant in federal court is plainly entitled under Rule 26(a)(2)(B) to be given the information spelled out therein, and none shoulder the burden to independently investigate and ferret out that information as best they can and at the expense of their client. The available penalty for failure to comply with Rule 26(a)(2)(B) is plain, and if a litigant refuses to comply with the requirements of the rule, he does so at his peril." *Carr v. Deeds*, 453 F.3d 593, 605 (4th Cir. 2006); *see also Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 279 (4th Cir. 2005)(affirming District Court

order excluding expert testimony); *Contech Stormwater Solutions v. Baysaver Tech.*, 534 F.Supp.2d 616 (D. Md. 2008) ("Excluding evidence as a sanction for non-disclosure, even in the absence of bad faith, supports what the Fourth Circuit has identified as the "basic purpose" of Rule 37(c)(1), which is to prevent surprise and prejudice to the opposing party.").  In other words, an incomplete disclosure is considered equivalent to a failure to disclose under the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P.37 (a)(3)(Lexis 2012); *see also Carr*, 453 F.3d at 605; *Saudi*, 427 F.3d at 279; *Contech*, 534 F.Supp.2d at 616.

The purpose of these disclosures is to give opposing parties a reasonable opportunity to prepare an effective cross-examination of the designating parties' expert witnesses and, if necessary, arrange for testimony from other experts. *See* Fed. R. Civ. P. 26(a)(2) Advisory Committee's Note (1993); *see also Pena-Crespo v. Puerto Rico*, 408 F.3d 10, 13 (1st Cir. 2005).  Indeed, federal courts require disclosing parties to produce *detailed and complete* reports so as to avoid unfair surprise to opposing parties and to conserve resources. *See, e.g.*, *Carr*, 453 F.3d at 604 ("Rule 26 disclosures are often the centerpiece of discovery in litigation that uses expert witnesses. A party that fails to provide these disclosures unfairly inhibits its opponent's ability to properly prepare, unnecessarily prolongs litigation, and undermines the district court's management of the case. For this reason,  [w]e give particularly wide latitude  to the district court's discretion to issue sanctions under Rule 37(c)(1)." (*quoting*, *Saudi*, 427 F.3d at 278-279 (emphasis in original)); *Pena Crispo*, 408 F.3d at 13 (reiterating that "[t]he failure to provide an expert report that satisfies the specific requirements of Rule 26(a)(2)(B) undermines opposing counsel's ability to prepare for trial"); *Krischel v. Hennessy*, 533 F. Supp. 2d

790, 798 (N.D. Ill. 2008) (quoting advisory committee note's language, court found that expert report containing only "sketchy and vague" disclosure of substance of expert's direct examination, and nothing about reasons for expert's opinions, was inadequate); *Giladi v. Strauch*, 2001 U.S. Dist. LEXIS 4645, at * 14-15 (S.D.N.Y. Apr. 13, 2001) (striking expert report which contained a brief statement of ultimate conclusions with no explanation of the bases and reasons therefore, no statement of how the medical records support the conclusion and no explanation of the methodology he utilized to draw his conclusions from the data available to him); *Minn. Mining & Mfg. Co. v. Signtech USA, Ltd.*, 177 F.R.D. 459, 460 (D. Minn. 1998) (acknowledging that the report requirement serves to eliminate unfair surprise to the opposing party and to conserve resources); *Reed v. Binder*, 165 F.R.D. 424, 429 (D.N.J.1996) ("the test of a report is whether it was sufficiently complete, detailed, and in compliance with the Rules so that surprise is eliminated, unnecessary depositions are avoided, and costs are reduced").

As the First Circuit has aptly explained:

> "The expert disclosure requirements are not merely aspirational, and courts must deal decisively with a party's failure to adhere to them. The Civil Rules provide in pertinent part that a party who "without substantial justification fails to disclose information required by Rule 26(a) . . . is not, unless such failure is harmless, permitted to use as evidence . . . any witness or information not so disclosed." Fed. R. Civ. P. 37(c)(1); see also D. Mass. R. 26.4(b)(1) (providing for preclusion of expert witnesses not seasonably identified). We have explained before that Rule 37(c)(1) 'clearly contemplates stricter adherence to discovery requirements, and harsher sanctions for breaches of this rule, and the required sanction in the ordinary case is mandatory preclusion.' *Klonoski v. Mahlab*, 156 F.3d 255, 269 (1st Cir. 1998).

See *Lohnes v. Level 3 Communs., Inc.*, 272 F.3d 49, 60 (1st Cir. Mass. 2001):

8

Thus, a federal court facing a motion to strike an expert report must focus it inquiry "… on the question whether the party that has failed to meet its Rule 26 obligations has shown substantial justification for that failure." *Peterson v. Scotia Prince Cruises, Ltd*., 222 F.R.D. 216, 217 (D. Me. 2004). "The day has long passed when we can indulge lawyers the luxury of conducting lawsuits in a manner and at a pace that best suits their convenience. The processing of cases must proceed expeditiously if trials are to be held at all." *Damiani v. Rhode Island Hosp*., 704 F.2d 12, 16 (1ˢᵗ Cir. 19

Federal courts have noted that "[n]othing causes greater prejudice that to have to guess how and why an adversarial expert reached his or her conclusion." *Reed v. Binder*, 165 F.R.D. 424, 430 (D.N.J. 1996). Accordingly, since the basic purpose of Rule 37(c)(1) is to prevent surprise and prejudice to an opposing party, there are only two situations in which the automatic preclusion sanction may be relaxed, *i.e.*, when the failure to disclose the witness or evidence is "substantially justified," or when the failure to disclose is "harmless." *See Sothern States Rack & Fixture, Inc. v. Sherwin-Williams Co*., 318 F.3d 592, 596 (4th Cir. 2003)(excluding expert testimony at trial where new opinion not disclosed until after trial started). The Court, however, is free to fashion a full and appropriate remedy for a party's failure to disclose under Rule 26(a)(2), including precluding expert testimony at trial and striking the expert report altogether, where there is an absence of substantial justification, or lack of harm.. *See Carr*, 453 F.3d at 604-605 ("In sum, we cannot say that the district court abused its discretion by excluding Dr. Cooper as a witness because plaintiff did not demonstrate substantial justification for her failure to comply with Rule 26(a)(2)(B), and the failure prejudiced defendants in their ability to defend against the accusations made by Dr. Cooper in a timely fashion.");

Saudi, 427 F.3d at 279 ("We hasten to add that as the district court recognized, it could have struck at the outset all of Captain Saudi's expert witnesses as a sanction for his failure to timely file Rule 26 disclosures."); *Giladi v. Strauch*, 2001 U.S. Dist. LEXIS 4645, at * 14-15 (S.D.N.Y. Apr. 13, 2001) (striking expert report which contained a brief statement of ultimate conclusions with no explanation of the bases and reasons therefore, no statement of how the medical records support the conclusion and no explanation of the methodology he utilized to draw his conclusions from the data available to him.)

In the case at bar, Dr. Callery's report does not provide the reasoning and basis for his opinions or the exhibits used to support his conclusions as required by Rule 26(a)(2). Initially, he states that he is the Chief Medical Examiner for the State of Delaware and the Director of Delaware's Forensic Science Laboratory.   *See Exhibit G*, *Expert Report of Dr. Callery ¶ 2.* He explains that he has held that position for 18 years. *Id.*  As part of his duties he explains that he has supervised the investigation of over 4000 deaths per year, performed hundreds of autopsies and investigations that involve the evaluation of shooting injuries cause by firearms and forensic interpretation of wounds caused by firearms, including some cases involving a shooting victim which is still alive. *Id.* at ¶ 3.

Dr. Callery states that in arriving at his conclusions in this matter, he reviewed pleadings and briefs filed by the parties; certain medical records from the University of Maryland Hospital, particularly relating to surgical procedures performed on Timothy Brockington after the shooting, and, most importantly, Dr. Callery states that he conducted a physical and oral examination of Timothy Brockington on January 30, 2012.

*Id.* at ¶ 7(a)-(f).  Dr. Callery summarizes some of this information in ¶¶ 10-16.  *Id. at ¶¶ 10-16.*

Dr. Callery then states that "after review of the material and information identified within this report," it is his opinion that:

> (a)    Mr. Brockington was rendered a paraplegic by the gunshot wounds he suffered on July 5, 2005. Further, Mr. Brockington retained sufficient awareness during the shooting to be aware of his loss of sensory and motor functions and when it occurred;
> (b)    the injuries to both of Mr. Brockington's hands rendered him incapable of holding or firing any sort of firearm after sustaining these wounds; and
> (c)    Mr. Brockington's paraplegia, hand and lung injuries, and other wounds rendered him incapable of throwing any object over a long distance after sustaining these wounds.

*Id.* at ¶ 17.

Dr. Callery's alleged support for his opinions is provided in one paragraph, ¶ 18, where he states "each of these opinions is reached to a reasonable degree of medical certainty based on my education, training and practical experience. In reaching these conclusions, I have followed the standard methodology for those in my field."  However, Dr. Callery does not provide an explanation of the bases and reasons to support these opinions,  nor does he explain what "the standard methodology" in his field is as it relates to determining whether an injury would prevent a person from performing a specific activity. He also provides no analysis related to how the medical records support the conclusions he has reached.  Most significantly, he does not provide a single explanation of the methodology he utilized to draw his conclusions from the data available to him. In fact, he does not even explain the methodology he used to physically and orally examine

Mr. Brockington.  *See Id.*    Lastly, he does not provide a transcript of his oral examination or explain the purpose of the oral examination and how it used to support his opinions.  Indeed, Dr. Callery specifically admits that "[a]t this time, I have not created any exhibits to summarize or support my opinions" even though he performed a physical examination of Plaintiff.  *Id.* at ¶ 19.

Accordingly, Plaintiff's expert report of Dr. Callery does not comply with the requirements of Rule 26(a)(2) as it does not contain the basis and reasoning for his opinions, nor does it include any exhibit to summarize his opinion. The report's shortcomings is of particular importance in this matter, considering the specificity of Dr. Callery's opinion regarding Mr. Brockington's ability to retain awareness of his loss of sensory and motor function during the shooting, as well as his ability to hold, fire or throw a firearm as a result of the injuries he sustained.  This is particularly the case where Dr. Callery conducted a medical examination *eight years* after the shooting occurred. *Id.* at ¶ 17.

The report submitted by Dr. Hunter also fails to comply with Rule 26(a)(2) in the same regard. Dr. Hunter states that he is a board certified physician in both physical medicine and rehabilitation and anesthesiology. *Exhibit F at p. 1.*  He states that to arrive at his opinions, he reviewed medical records and performed a physical examination. *Id.*.  He explains that "based on [his] physical examination and his review of the medical records that has developed the following opinions regarding the extent of Mr. Brockington's injuries and the impact those injuries will have and will have on his quality of life." *Id.*  Specifically, Dr. Hunter opines that:

> Mr. Brockington's paraplegia is complete and permanent
> below the twelfth thoracic vertebrae, and the resultant

> impact on his mobility will not change. He will be
> wheelchair bound for the remained of his life and is not a
> candidate for any assistive walking devices due to the lack
> of muscle control in his lower extremities. Mr. Brockington
> will continue to require the assistance commensurate with
> complete paraplegia for his activities of daily living (e.g.,
> wheelchair access ramps, assistive devises for reaching and
> transfer, etc.). Mr. Brockington will suffer from chronic
> pain of the aforementioned locations and intensities for the
> duration of his life. He will require chronic pain medication
> and therapeutic modalities intermittently for the
> management of the chronic pain. He will also have chronic
> decubitus ulcerations of the bilateral buttock region
> carrying the potential of future musculoskeletal infections
> and inflammations. He is also at risk for chronic urinary
> tract infection that may ultimately cause renal impairment
> and possibly a significant diminution of renal function.

*Id.* at p. 10.

However, Dr. Hunter does not include a report or notes associated with his physical examination of the Plaintiff, only a summary of his findings. *Id.* at p. 8-10. More importantly, he does not explain how the medical records and his examination support his findings identified above, or explain what methodology he employed in conducting his examination of the Plaintiff. *See Id.* Lastly, his report does not identify the rate of compensation he is receiving for his participation in this case. *Id.*

Thus, Plaintiff's Rule 26(a)(2) disclosures for Dr. Calley and Hunter are wholly deficient because the opinions expressed in the reports are made without the basis and reasons for the opinion, the methodology used in reaching the opinion, and they failed to attach the exhibits to be used as a summary of or support for such opinions. *See Exhibits F and G*.

Without complete expert reports from Plaintiff, Defendants are severely prejudiced in the defense of this case. Indeed, Defendants cannot prepare to depose these

witnesses or cross-examine them at trial. Nor is it possible for Defendants to identify and disclose rebuttal experts, to determine whether rebuttal experts are even necessary.

As previously noted, Dr. Callery's failed to provide any basis or reasoning, nor an explanation of the methodology that he employed as a trained pathologist, to render the opinion that Mr. Brockington retained sufficient awareness during the shooting to be aware of his loss of sensory and motor function, and when it specifically occurred during the course of the July 5, 2005 shooting. Nor did Dr. Callery provide the specific reasoning and basis he employed to formulate his opinion of his field regarding the physical limitations caused by Plaintiff's wounds with respect to holding, firing and throwing of a firearm. Therefore, it is impossible for Defendants' rebuttal expert witnesses to evaluate the methodology used and determine whether those opinions are properly derived from the standard and excepted methodology used in Plaintiff's expert's particular field. *See Exhibit H, Letter from Dr. David R. Fowler to Glenn T. Marrow*, *dated August 31, 2012*. Indeed, Dr. Callery's failure to follow Rule 26(a)(2) makes it impossible to tell whether, in fact, his opinions are not within his scope of his particular expertise.

Thus, in order for the Defendants to rebut the opinions of Dr. Callery and Dr. Hunter, the Defendants will be forced to speculate as to the reasons and basis of Dr. Callery's and Dr. Hunter's opinions and "shoulder the burden to independently investigate and ferret out information" that Plaintiff's expert should have provided under Rule 26(a)(2). As the Fourth Circuit has noted, such an outcome is exactly what the requirements of Rule 26(a)(2) seek to avoid.

14

To the extent Plaintiff seeks to justify his failure to timely make the required disclosures based on the fact discovery was ongoing or that he needed certain information prior to submission of her disclosures, Plaintiff's opposition would be meritless. It goes without saying that the Federal Rules of Civil Procedure contemplates, and the Scheduling Order requires, parties to make Rule 26(a)(2) disclosures well before the discovery deadline. Furthermore, as previously noted, Plaintiff had the ability to request an extension of time to make his disclosures before the deadline past, but he never did so. The fact that discovery was ongoing at the time his disclosures were due does not afford Plaintiff the right to disregard his discovery obligations and the deadlines set by the Court.    Defendants' May 10, 2012 letter to Plaintiff specifically notified them of the deficiency of his rule 26(a)(2) disclosures, and yet Plaintiff has chosen not remedy those deficiencies. *See Exhibit A Letter from Glenn T. Marrow to Christopher Thatch, dated May 10, 2012*.

Moreover, the deficiencies identified herein, *i.e*., the lack of the basis and reasoning to support Plaintiff's experts' opinions, were readily available to the Plaintiff well before his deadline. Dr. Callery stated that he conducted his examination of Plaintiff on January 30, 2012; Dr. Hunter did the same on February 17, 2012. *See Exhibits F and G*. As noted by Plaintiff's initial disclosures, Plaintiffs' experts both have had access to the medical records since at least as early as April 2010. Thus, the failure to explain how those medical examinations and records support their conclusions is simply inexcusable at this point.

Accordingly, in light of Plaintiff's persistent and continuous failure to adhere to discovery deadlines, and provide disclosures that substantially comply with Rule

26(a)(2), his experts and his expert report should be stricken and Plaintiff should be barred from utilizing expert testimony in this case.

## CONCLUSION

Plaintiff has failed to provide Defendants with the opinions of Dr. Callery and Dr. Hunter within the deadlines of the Scheduling Order. That failure has prejudiced the Defendants in this action and Plaintiff has failed to provide substantial justification for their failure. Accordingly, Plaintiff's experts, Drs. Callery and Hunter, should be precluded from testifying in this matter.

Respectfully submitted,

_____/S/_____
Troy A. Priest
Federal Bar. No. 12022
Email: tpriest@stroudpriest.com
STROUD & PRIEST
Inner Harbor Center
400 E. Pratt Street, 8th Floor
Baltimore, Maryland 21202
Telephone: (443) 759-3112
*Attorneys for Defendant Antwan Boykin*

_____/S/_____
Glenn T. Marrow
Chief Solicitor
Federal Bar No. 23731
Email:
glenn.marrow@baltimorepolice.org

_____/S/_____
Daniel Beck
Assistant City Solicitor
Federal Bar No. 29646
Email:
Daniel.beck@baltimorepolice.org

16

_____/S/_____
Christopher Sakles
Assistant City Solicitor
Federal Bar No. 29711
Email:
chris.sakles@baltimorepolice.org

BALTIMORE CITY
DEPARTMENT
OF LAW
Office of Legal Affairs
100 N. Holiday Street
Baltimore, Maryland 21202
Telephone: (410) 396-2496
Facsimile: (410) 396-2126
*Attorneys for Defendant*
*The Baltimore Police Department*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 31st day of August, 2012, a copy of the foregoing was forwarded to all counsel of record via the electronic filing system of the United States District Court for the District of Maryland.

__/s/_____
Daniel C. Beck (29646)

17

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Northern Division)**

| | | |
|---|---|---|
| **TIMOTHY BROCKINGTON** | * | |
| **Plaintiff** | * | |
| **v.** | * | **CASE NO: 1:08-CV-01713-CCB** |
| | * | |
| **ANTWAN LAMONT BOYKIN,** *et al.* | * | |
| **Defendants** | * | |
| | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**<u>FED. R. CIV. P. 26(c) AND L.R. 104.7 CERTIFICATION</u>**

Undersigned counsel hereby certifies that the Defendants have, pursuant to Fed. R. Civ. P. 26(c) and L.R. 104.7, in goof faith attempted to resolve the above on-going discovery dispute without resolution.

On May 10, 2012, Plaintiff failed to file amended reports, to include their opinions, for either Dr. Callery or Dr. Hunter as required by the Court's Scheduling Order issued on January 18, 2012. *See Exhibit A, Letter from Glenn T. Marrow to Christopher Thatch, dated May 10, 2012*; *Exhibit B, Letter from E-mail from Christopher Thatch to Glenn T. Marrow and Troy Priest*, *dated May 2, 2012, p. 2.* On May 2, 2012, fifty-one (51) days after the deadline to file Rule 26(a)(2) disclosures had past, Plaintiff sent Defendants correspondence indicating that they had intended to file their experts reports on the supplemental deadline of May 7, 2012. *See Exhibit B, Letter from E-mail from Christopher Thatch to Glenn T. Marrow and Troy Priest*, *dated May 2, 2012, p. 2.* Plaintiff indicated, however, that the expert reports would not be available by then and

18

another extension of the discovery deadline.  *See Id.* Defendants consented to the extension, but explained to Plaintiff that his interpretation of the initial disclosure requirement under Rule 26(a)(2), as well as the supplemental disclosure deadline under Rule 26(e) deadline was incorrect.  *See Exhibit A*, *Letter from Glenn T. Marrow to Christopher Thatch, dated May 10, 2012*.  Most importantly, Defendants consented to the extension upon the contingency that should the Court accept the new proposed scheduling order, that Plaintiff would served complete reports in compliance with Rule 26 (a)(2) within the new applicable deadlines. *See Id.* In that letter, dated May 10, 2012, the Defendants pointed out the deficiencies that needed to be corrected  in the Plaintiff's Rule 26(a)(2) disclosures, including those indetified in the instant motion, stating that "your expert disclosures for Dr. Richard Callery, Dr. Keith Hunter and John Micklejohn failed to have: (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; and (iii) any exhibits that will be used to summarize or support them. See Fed. R. Civ. Proc. 26 (a)(2)(i)-(iii)." The Court accepted the joint motion to extend the discovery deadline and issued a new order, dated May 29, 2012, requiring Plaintiff to submit expert disclosure under Rule 26(a)(2) by August 17, 2012.  *See ECF Paper No. 148*.

On August 17, 2012, Plaintiff's legal counsel contacted legal counsel for the Defendants and stated that they were having some difficulties getting a signature from one of his experts, Dr. Callery, and Plaintiff requested a short extension till Monday, August 20, 2012 to file his Rule 26(a) disclosures for Dr. Callery.  *See Exhibit C*, *E-Mail from Mark Lenz to Glenn T. Marrow dated August 17, 2012*.  Defendants' agreed to the short extension of time.  On August 17, 2012 at 11:55 p.m., Plaintiff served, via

electronic mail, the expert report of Dr. Keith Hunter and John Meiklejohn. *See Exhibit D, E-mail Correspondence from Mark Lenz, dated August 17, 2012.* On August 20, 2012, Plaintiff served, by electronic mail, the expert report of Dr. Richard Callery. *See Exhibit E, E-mail Correspondence from Mark Lenz, dated August 20, 2012.*

To Defendants' surprise, the emailed reports did not comply with Rule 26(a)(2) in that the they did not contain any of the attachments referenced in the reports. Significantly, although the amended reports for Drs. Callery and Hunter included their opinions, their respective reports did not include any discussion of their basis or reasoning to support their conclusions, as required by Rule 26(a)(2). *See Exhibits F & G, Expert Reports of Drs Hunter and Callery.* Nor did the reports explain the methodology employed by the expert to support the conclusions, which also is required by Rule 26(a)(2). *See Id.*

Defendants waited for the paper versions of Plaintiff's expert reports to arrive by U.S. Mail, in the hopes that they would contain attachments. To Defendants' disappointment, however, the Plaintiff's paper versions of the report did not contain any additional information.

At no time did counsel for the Plaintiff indicate that the reports they were submitting would be deficient in anyway. Nor did Plaintiff's counsel request any extension to provide further supplementation of the reports in order to comply with Rule 26(a). Thus, because Rule 26(a)(2) disclosures must be made "at the times and in the sequence that the court orders," and Plaintiff's deadline to for Rule 26(a)(2) disclosures has past, Plaintiff's Rule 26(a)(2) disclosures cannot be cured by agreement of counsel. Fed. R. Civ. P. 26(a)(2)(D)(i). Furthermore, as result of Plaintiff's failure to comply with

20

Rule 26(a)(2), Defendants cannot meet their obligations under the Court's Scheduling Order to file its Rule 26(a)(2) disclosures on Friday, September 7, 2012.  Moreover, the Defendants have given the Plaintiff multiple opportunities and consented to multiple extensions in order to allow Plaintiff time to comply with Rule 26(a)(2) and Plaintiff has continued to refuse to comply.  In fact, Plaintiff has stated that he disagrees with the Defendants' interpretation of the Federal Rules with respect to Rule 26(a)(2) and (f) and the requirements of the Court's Scheduling Order. *See Exhibit H, Letter from Christopher Thatch to Glenn T. Marrow and Troy Priest*, *dated May16, 2012, p. 2.*  Accordingly, in light of Plaintiff's persistent and continuous failure to adhere to discovery deadlines, and to provide disclosures that substantially comply with Rule 26(a)(2), the Defendants have filed the instant motion to strike Plaintiff's experts, Dr. Callery and Dr. Hunter.



_____/S/_____ _____
Daniel C. Beck

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 31st day of August, 2012, a copy of the foregoing was forwarded to all counsel of record via the electronic filing system of the United States District Court for the District of Maryland.

__/s/_____
Daniel C. Beck (29646)