IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TIMOTHY BROCKINGTON          :
                             :
                             :
                             :
         v.                  :    Case No. CCB-08-1713
                             :
                             :
ANTWAN LAMONT BOYKINS *et al.* :

## MEMORANDUM

Plaintiff Timothy Brockington brings this action under 42 U.S.C. § 1983 alleging that defendant Antwan Boykin,[1] a former Baltimore City police ("BPD") officer, used excessive force in a confrontation with Brockington on the evening of July 4, 2005. Prior to filing this suit, Brockington was convicted in state court of carjacking, kidnapping, and robbing Boykin on that evening. Boykin shot Brockington multiple times during the encounter, leading to permanent injuries and paralysis. Brockington also brings related state law claims; alleges Boykin gave false information that Brockington was armed that evening, leading to gun possession charges for which Brockington was acquitted; and further alleges defendant BPD's policies and its failure to properly train and supervise Boykin led to his injuries. The defendants have filed motions for summary judgment, and both parties have filed discovery-related motions. All of the motions have been fully briefed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2011).

## BACKGROUND

Brockington and non-party Tyrone Gross were convicted by a jury on March 1, 2007, of carjacking, kidnapping, and robbing Boykin on the evening of July 4, 2005. (BPD Mem., Ex. 1, *State v. Timothy Brockington*, Maryland Court of Special Appeals Unpublished Opinion,

---

[1] Although this case was mistakenly filed with Boykin's last name misspelled ("Bokyin*s*"), the court will use the correct spelling throughout the memorandum.

1

September 2007, ECF No. 167-3, at 5). The jury acquitted Brockington of all charges related to gun possession or the use of a weapon in connection with any other crime, as well as a charge that he conspired with Gross to murder Boykin. (Pl.'s Opp., Ex. J, Verdict Tr., ECF No. 173-10). Although Brockington maintains his complete innocence, he does not (and cannot) contest the validity of his convictions in this action.

The encounter between Brockington and Boykin ended shortly after midnight on July 5, 2005, in the alleyway behind the 1100 block of Myrtle Avenue in Baltimore. According to the testimony of both Brockington and Boykin, the confrontation between the parties culminated when Brockington was standing at the bottom of the back stairs of 1123 Myrtle Avenue and Boykin was standing at the top.[2] (BPD Mem., Ex. 3, Boykin's Testimony at Brockington's Criminal Trial ("Boykin Tr."), ECF No. 167-5, at 2-96; Pl.'s Opp., Ex. A, Brockington Dep., ECF No. 173-1, at 84-89). Boykin drew his service weapon and shot Brockington several times; Brockington then fell off the stairs and onto the ground. (Boykin Tr. at 2-96–97; Brockington Dep. at 88-90, 106-107). Boykin also dismounted the stairs and continued shooting at Brockington while he was on the ground. (Boykin Tr. at 2-97–98; Brockington Dep. at 90-95). Boykin then fired several shots into the house before turning the gun back onto Brockington. (Boykin Tr. at 2-98–99; Brockington Dep. at 93, 95). He continued pulling the trigger until he realized his weapon was out of ammunition. (Boykin Tr. at 2-99). Brockington was permanently paralyzed by the gunshot wounds he sustained that evening. (Pl.'s Opp., Ex. G, Dr. Callery Expert Report, ECF No. 173-7, at 5).

---

[2] Although it is now undisputed that Brockington was the individual Boykin shot at the bottom of the steps of 1123 Myrtle Avenue, Boykin apparently could not identify him at trial. (*See* Boykin Tr. at 2-106–108).

The central issue in this case, and the only genuine factual dispute between the parties, is whether it was lawful for Boykin to continue firing at Brockington once he was wounded and on the ground. Boykin testified at Brockington's criminal trial that Brockington was armed during the entire confrontation and that, after Brockington was initially shot, "[h]e was on the ground and had the gun in his hand. He was crawling, so I started shooting him again. . . . My life was still in danger." (Boykin Tr. at 2-97–98).

Brockington, however, has always maintained that he was not armed. (Brockington Dep. at 100, 136). He points to several facts in the record to support this assertion. First, at the criminal trial, Boykin identified Tyrone Gross as the individual who was armed that evening. (Boykin Tr. at 2-106–108). Second, a gun was recovered in a fenced yard near the crime scene, but not near Brockington's paralyzed body when he was secured by police. (Pl.'s Opp., Ex. F, Edmondson Dep., ECF No. 173-6, at 121). Brockington's medical expert has stated that Brockington would have been incapable of holding or throwing a gun after he was initially shot and fell to the ground. (Dr. Callery Expert Report at 5). The gun that was recovered had no blood or fingerprints on it. (*See* Pl.'s Opp., Ex H., Brown Dep., ECF No. 173-8, at 98; Ex. I, Lansey Dep., ECF No. 173-9, at 80-81). Finally, as noted above, the jury acquitted Brockington of all gun-related charges.

In short, this action turns on a genuine dispute between the parties regarding the threat Brockington posed once he was initially wounded and on the ground. Brockington filed this suit seeking damages for the injuries he sustained in the shooting, and this court subsequently appointed him counsel for the civil case. The court also granted BPD's request to bifurcate Brockington's *Monell* claims against the police department.

## ANALYSIS

### A. Standard of Review

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Supreme Court has clarified that this does not mean any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). Whether a fact is material depends upon the substantive law. *See id.*

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion,'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alteration in original) (quoting *United States v. Diebold*, 369 U.S. 654, 655 (1962)), but the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (internal quotation marks omitted).

### B. Appropriate Standard for Excessive Force

The defendants incorrectly assert that they are entitled to partial summary judgment on Brockington's excessive force claim, to the extent it is in part brought under the Fourteenth Amendment, because "when a police officer . . . uses deadly force (at least within the course of an arrest), such claims are properly analyzed under the Fourth Amendment." (BPD's Reply, ECF No. 177, at 22). First, this argument is not grounds for summary judgment but is merely a dispute over the proper legal standard that governs Brockington's excessive force claim (he has pled both amendments in his second amended complaint). Second, the Fourteenth Amendment governs *both* excessive force claims occurring during a "seizure" within the meaning of the Fourth Amendment, because the Fourth Amendment is incorporated against the states through the Fourteenth, *see Wolf v. Colorado*, 338 U.S. 25, 27-28 (1949), *and* excessive force claims that occur outside of the scope of a "seizure" effected by law enforcement, *see County of Sacramento v. Lewis*, 523 U.S. 833, 843-45 (1998); *see also Graham v. Connor*, 490 U.S. 386, 388 (1989) (the Fourth Amendment governs "claim[s] that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other 'seizure' of his person"). It is likely that the Fourth Amendment standard, as incorporated against the states in the Fourteenth, governs Brockington's claim, because Boykin was a law enforcement officer using intentional means to "seize" Brockington's person. *See Lewis*, 523 U.S. at 844 ("[A] Fourth Amendment seizure . . . occur[s] . . . only when there is a governmental termination of freedom of movement through means intentionally applied.") (quotation omitted). Because Brockington's excessive force claim will go forward, however, it is unnecessary to determine the standard governing his claim at this time.

### C. Absolute and Qualified Immunity

The defendants argue that Boykin is entitled to (1) absolute immunity on Brockington's claim that Boykin provided false information leading to wrongful gun possession charges and (2) qualified immunity with respect to Brockington's excessive force claim. The defendants are entitled to summary judgment on the former ground, but not the latter.

Brockington attempts to rebut Boykin's absolute immunity argument by framing his false testimony claim against Boykin as a "malicious-prosecution type" § 1983 claim, as recognized by the Fourth Circuit in *Lambert v. Williams*, 223 F.3d 257, 261-62 (4th Cir. 2000). There, the Fourth Circuit explained that where a plaintiff's "arrest was not supported by probable cause and the authorities continued his prosecution after it was apparent he was innocent[,]" the plaintiff can state a claim for a violation of his or her Fourth Amendment right against unreasonable seizures under § 1983. *See Id.* at 261-62. Here, Brockington does not (and, indeed, cannot) argue that he was falsely arrested based on Boykin's statement that he was armed, even if this statement was shown to be malicious and false. As his conviction demonstrates, authorities had ample probable cause to arrest and prosecute him for his actions that evening. While it is true Brockington was acquitted of all gun related charges, he was convicted of three serious offenses; accordingly, he was not maliciously prosecuted and his arrest was in no way unreasonable. *See Miller v. Prince George's County*, 475 F.3d 621, 627 (4th Cir. 2007) ("[T]he Fourth Amendment prohibits law enforcement officers from making unreasonable seizures, and seizure of an individual effected without probable cause is unreasonable.") (citing *Malley v. Briggs*, 475 U.S. 335 (1986); other citations, quotation, and alterations omitted). The defendants are, therefore, correct that Brockington can state no independent claim against Boykin for his testimony at any of Brockington's criminal proceedings, even if that testimony was at all false. *See Lyles v.*

*Sparks*, 79 F.3d 372, 378 (4th Cir. 1996). The defendants are entitled to summary judgment on any claim arising out of allegations that Boykin gave false testimony.

On the other hand, the defendants have not demonstrated that Boykin is entitled to qualified immunity on Brockington's excessive force claims. Nothing in the record that has developed in discovery has substantially altered the Fourth Circuit's analysis in the defendants' appeal of this court's earlier denial of qualified immunity. *See Brockington v. Boykins*, 637 F.3d 503, 506-508 (4th Cir. 2011). The central, genuine issue of material fact in this case remains whether Boykin was justified in continuing to shoot Brockington after he fell to the ground from Boykin's initial volley of shots. As noted by the Fourth Circuit earlier in this case, "whether or not Boykin had probable cause to detain Brockington is tangential to the question of deadly force." *See id.* at 507. The defendants still fail to distinguish between the questions of whether Boykin acted reasonably in initially shooting Boykin and whether his continued shooting him on the ground was reasonable. It is not, as defendants term it, a "minor discrepancy" that some evidence, like Boykin's testimony at trial, suggests that Brockington was a threat even after he was lying wounded on the ground, and other evidence has been adduced, such as Brockington's testimony and the absence of any gun found near his body, that does not suggest he was armed or that "deadly force was necessary or reasonable once Brockington was initially shot, thrown to the ground by the force of the bullets, and wounded." *Id.* The defendants point to no relevant authority on this issue. For example, their assertion that *Anderson v. Russell*, 247 F.3d 125, 129-131 (4th Cir. 2001), supports Boykin's qualified immunity claim is unavailing. There, an officer was entitled to qualified immunity because his testimony—that he perceived a gun shaped bulge in the plaintiff's pocket and that the plaintiff was moving his hands toward it when the officer fired—was uncontested. *See id.* at 130-31. If the officer in *Anderson* had *continued* shooting the

plaintiff after the plaintiff was initially shot and lying wounded on the ground, however, that officer, like Boykin, may not have been entitled to qualified immunity. Accordingly, the defendants are not entitled to summary judgment on Brockington's excessive force claim on immunity grounds.

### D.  *Monell* Liability (and Related Motion for Protective Order)

On January 13, 2010, the court granted BPD's motion to bifurcate and stay discovery of Brockington's *Monell* claims until resolution of his claims against Boykin. BPD has not demonstrated that Brockington has violated the court's bifurcation order by seeking discovery related to anything other than his claims against Boykin. Discovery pertaining to Boykin's training, which BPD alleges is improper, is relevant to Brockington's claims against Boykin, apart from his *Monell* claims. Accordingly, BPD's motion for summary judgment on Brockington's *Monell* claims is premature and will be denied without prejudice.[3]

### E.  Estoppel and the *Heck* Doctrine

The defendants make three unavailing arguments that Brockington should be estopped from pursuing his claims because of various factual positions he has taken in this matter. First, the defendants' renewed assertion that *Heck v. Humphrey*, 512 U.S. 477 (1994), bars Brockington's excessive force claim is without merit. *Heck* only bars claims for damages for an "allegedly unconstitutional conviction . . . or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid." *Id.* at 486. This category includes § 1983 claims which would, if successful, necessarily "negate an element of the offense of which [the plaintiff] has been convicted." *Id.* at 486 n.6. Here, the defendants have not demonstrated

---

[3] Because the discovery Brockington has sought in this case all pertains to the training of Boykin and is relevant to Brockington's claims against Boykin, BPD's motion for a protective order will be denied.

that Brockington's kidnapping or other criminal convictions would somehow be negated by a finding in Brockington's favor that, after Boykin eliminated the threat Brockington posed, Boykin's continued shooting of Brockington while he was on the ground was excessive force in violation of Brockington's constitutional rights. Brockington can be both guilty of the charged crimes *and* injured by Boykin more than was lawful or reasonable.

Second, and relatedly, the defendants' assertion that Brockington is "collaterally estopped" from relitigating the facts of his conviction is without merit. *See Moore v. Mahone*, 652 F.3d 722, 723 (7th Cir. 2011) ("The *Heck* rule is analogous to collateral estoppel[.]"). The defendants argue that, under Maryland law, a kidnapping conviction necessarily requires precise findings of fact of the circumstances by which a victim's liberty is restored. They assert that, because Brockington was convicted of kidnapping Boykin, he is collaterally estopped from "relitigating" any of the facts that relate to Boykin's escape and, therefore, cannot claim that Boykin continued to shoot him after he was no longer a threat. To support this assertion, the defendants principally point to *State v. Stouffer*, 721 A.2d 207, 214-16 (Md. 1998). There, the Maryland Court of Appeals grappled with the difficult issue of when kidnapping can be charged as a separate offense and when kidnapping is merely incidental to other crimes committed simultaneously. Statutorily, in Maryland, a person might be guilty of kidnapping whenever he or she "by force or fraud, carr[ies] or cause[s] a person to be carried in or outside the State with the intent to have the person carried or concealed in or outside the State," Md. Code Ann., Crim. Law, § 3-502, and the court recognized that a literal reading of this statute could lead to unjust penalties for a host of minor offenses. *See Stouffer*, 721 A.2d at 215. So, the Court of Appeals held that determining when kidnapping can be charged separately is unique to "the

9

circumstances of each case[.]" *Id.* at 215.[4] Thus, the fact that Brockington was convicted of kidnapping Boykin merely demonstrates that such circumstances existed here. But, Brockington does not dispute that he kidnapped Boykin, nor that, at some point, Boykin's liberty was restored. Nothing in the jury's verdict or prior criminal proceedings establishes exactly when or how Boykin's kidnapping ended. As *Stouffer* demonstrates, a kidnapping conviction does not require precise findings as to any specific facts *other than* that a defendant met the statutory definition. *See id.* No factfinder has yet determined whether Boykin acted lawfully or reasonably when he shot Brockington after Brockington was wounded on the ground, and Brockington's kidnapping conviction does not touch that issue. *Cf. Gray v. Farley*, 13 F.3d 142, 146 (4th Cir. 1993) (excessive force claim that plaintiff was beaten by police officers was collaterally estopped where state trial court had found, in a suppression hearing, that plaintiff's confession had not been "coerced by beatings").[5]

Otherwise, because Brockington was acquitted of gun possession and conspiracy-to-murder charges, he is not estopped from asserting he was unarmed when he was shot by Boykin. While Brockington cannot deny he kidnapped, carjacked, and robbed Boykin, as these are legally established facts of his conviction, Brockington is not collaterally estopped from the factual

---

[4] The Court of Appeals elaborated:
> "We do not adopt, however, any specific formulation of standards for making that determination, but rather focus on those factors that seem to be central to most of the articulated guidelines, principally: How far, and where, was the victim taken? How long was the victim detained in relation to what was necessary to complete the crime? Was the movement either inherent as an element, or, as a practical matter, necessary to the commission[] of the other crime? Did it have some independent purpose? Did the asportation subject the victim to any additional significant danger?"

*Stouffer*, 721 A.2d at 215.

[5] If anything, given that the jury acquitted Brockington of all gun possession and related charges, the defendants should carefully consider how forcefully to press their assertion that the prior criminal proceeding established the particular factual circumstances of Brockington and Boykin's confrontation.

10

positions he has taken in this case, because neither his excessive force claim, nor the underlying facts he must prove to prevail on that claim, are identical to "issue[s] decided in the prior adjudication." *See Standard Fire Ins. Co. v. Berrett*, 910 A.2d 1072, 1084 (Md. 2006).

Finally, the defendants argue that, because Brockington has asserted he "could not move" after he was shot by Boykin and fell to the ground, Brockington is "judicially estopped" from arguing that Boykin's continued shooting of him on the ground caused his paralysis. Setting aside that the extent of the injuries caused by Boykin's subsequent, as opposed to first, volleys of shots is an issue of damages, not liability, Brockington's assertion that he "could not move" is not an "admission" that he was permanently, physiologically paralyzed by the first shots. At most, Brockington's statement establishes that the force and pain of the initial shots temporarily rendered him immobile. It is entirely consistent for Brockington to assert that the subsequent wounds caused permanent paralysis, and resolution of this material dispute is an issue for the jury.

### F. "Under Color" of State Law

BPD argues, in the alternative, that Boykin was not acting under color of state law and, thus, not acting within the reach of § 1983, when he shot Brockington. Determining whether an officer's conduct is attributable to the state "is a matter of normative judgment, and the criteria lack rigid simplicity." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)). "While it is certainly true that acts of police officers in the ambit of their personal, private pursuits fall outside of 42 U.S.C. § 1983, . . . the lack of outward indicia suggestive of state authority—such as being on duty, wearing a uniform, or driving a patrol car—are not alone determinative of whether a police officer is acting under color of state law." *Revene v. Charles County*

*Commissioners*, 882 F.2d 870, 872 (4th Cir. 1989) (alteration and quotation omitted). Here, it is undisputed that, in the course of the kidnapping, Boykin invoked his official police authority to discourage the crime, and he ultimately employed his state-issued firearm to incapacitate Brockington, a firearm Boykin was mandated to carry by BPD regulations. (*See* Boykin Tr. at 2-90). If Boykin did ultimately use excessive force in shooting Brockington, it seems that such force would be a "'[m]isuse of power . . . possessed by virtue of state law,' which of course falls within § 1983." *Id.* at 874 (quoting *Monroe v. Pape*, 365 U.S. 167, 183-86 (1961)) (alteration in original). Thus, BPD has not demonstrated that it is entitled to summary judgment on this issue. *See id.* at 873-74.

### G. Fifth Amendment Privilege (and Related Motion to Compel)

The defendants are correct, however, that Brockington cannot use his Fifth Amendment privilege to avoid relevant discovery in this matter. During his deposition, Brockington refused to answer a question about what his criminal co-defendant, Tyrone Gross, was retrieving from Brockington's trunk during their encounter with Boykin. This question was posed in direct response to Brockington's narrative version of the events of that evening. BPD filed a motion to compel an answer to this question. As Brockington all but concedes in his opposition memorandum (stating that his valid invocation of his Fifth Amendment rights "cannot justify dismissal without warning"), while it would be unwarranted to dismiss his claims outright for his invocation of his right against self-incrimination, he may not continue to refuse to answer the defendants' question related to the events of July 5 and expect his claims to go forward without any consequence.

While there are occasions when a plaintiff may maintain a Fifth Amendment privilege in civil discovery without sanction, *see, e.g.*, *Swann v. City of Richmond*, 462 F. Supp. 2d 709, 715

(E.D. Va. 2006), here, Brockington's refusal to answer a question about the circumstances of his encounter with Boykin would unfairly prejudice the defendants. In *Swann*, the court weighed four factors in denying a defendant's motion to compel a § 1983 plaintiff to waive his Fifth Amendment privilege:

> (1) the validity of the plaintiff's assertion of his Fifth Amendment privilege, (2) the costs to the plaintiff associated with compelling him to answer the deposition questions at issue, (3) the extent to which upholding his assertion would thwart discovery of issues at the heart of plaintiff's lawsuit, and (4) whether and how easily the defendants could obtain the information sought from other sources.

*Id.* at 713. Each of these factors weighs against Brockington's invocation of the privilege. First, Brockington has testified extensively about the events of the evening at issue, and he has already been convicted or acquitted of a variety of offenses based on those events. Thus, his assertion of a Fifth Amendment privilege now is relatively weak. Second, given the narrow scope of the question at issue, the cost of his answering this question appears similarly low. Third, while the answer to the question would not seem to go to the "heart" of Brockington's lawsuit, it does appear directly relevant to his version of the events. Given that the central dispute of material fact in this case revolves around the credibility and reliability of Brockington's and Boykin's conflicting testimony about that night, the question is significant. Finally, again given that Brockington's testimony is one of the very few sources of information available about that evening—and it is likely that Tyrone Gross would have a right to invoke the Fifth Amendment were the question at issue posed to him—there is no other "source" of the information the defendants seek. Thus, Brockington must answer the defendants' question if he wishes to continue to pursue his claims without incurring a sanction.

The defendants are not yet entitled to sanctions, dismissal or another remedy at this time based on Brockington's invocation of his Fifth Amendment privilege. If Brockington continues

to refuse to answer, however, the defendants will have grounds to seek a remedy from this court, and Brockington should consider himself so warned. Accordingly, the defendants' motions for summary judgment will be denied without prejudice on this issue.[6]

### H.  State Law Claims Against Boykin

Finally, Boykin is entitled to summary judgment on Brockington's state law claims of battery, negligence, gross negligence, and intentional infliction of emotional distress because Brockington failed to comply with the notice requirement of Maryland's Local Government Tort Claims Act ("LGTCA"). Brockington argues that, because he was injured, incarcerated, and lacking counsel, he had "good cause" to miss the 180-day statutory notice requirement. *See* Md. Code Ann., Cts. & Jud. Proc., § 5-304(d). However, "[t]he test for good cause is 'whether the claimant prosecuted his claim with that degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances.'" S*ee Quigley v. United States*, 865 F. Supp. 2d 685, 693 (D. Md. 2012) (quoting *Rios v. Montgomery County*, 872 A.2d 1, 22 (Md. 2005)). Brockington filed his claims in June 2008, well after he was discharged from the hospital and his criminal trial had ended. Incarceration and lack of counsel did not preclude Brockington from initially filing his complaint. Brockington has not demonstrated he was incapable of meeting "the strict notice requirements" of the LGTCA nor that he exercised any degree of diligence in pressing his state law claims. Thus, they are procedurally barred. *See Heron v. Strader*, 761 A.2d 56, 63-64 (Md. 2000) (holding that it was not abuse of discretion for trial court to find that the "pendency of a criminal case [is] not sufficient to constitute good cause for late filing").

### CONCLUSION

---

[6] BPD's motion to compel similarly will be denied without prejudice pending further discovery.

For the reasons stated above, the defendants' motions for summary judgment will be granted in part, denied in part, and denied without prejudice in part. BPD's motion for protective order will be denied, and its motion to compel will be denied without prejudice. As to the parties' other pending motions, Brockington's motion for other relief to hold oral argument on submitted discovery motions and to stay discovery pending their resolution will be granted in part and denied in part. While the court did not hold oral argument on the pending discovery issues, the discovery deadlines in this case will need to be altered in light of the court's rulings permitting further discovery by both parties. The defendants' joint motion to strike Brockington's experts will be denied without prejudice and resolved at or closer to the date of trial.

A separate Order follows.

March 29, 2013                                   /s/
     Date                                            Catherine C. Blake
                                                  United States District Judge