IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| TIMOTHY BROCKINGTON | : | |
| | : | |
| v. | : | Civil No. CCB-08-1713 |
| | : | |
| ANTWAN LAMONT BOYKINS *et al.* | : | |
| | : | |

**MEMORANDUM**

Plaintiff Timothy Brockington sues Antwan Boykin[1] and his former employer, the Baltimore City Police Department ("BPD"), under 42 U.S.C. § 1983, alleging that Boykin employed excessive force to subdue Brockington in an encounter early on the morning of July 5, 2005. The circumstances of that encounter supported Brockington's conviction, in a previous proceeding in Maryland court, of carjacking, conspiring to kidnap, kidnapping, and robbing Boykin. And Boykin's use of force that night, which brought the encounter to a close, has left Brockington paralyzed and paraplegic. Boykin and the BPD each move for summary judgment, (Boykin Mot. Summ. J., ECF No. 208; BPD Mot. Summ. J., ECF No. 210), as they have twice before, (Boykin Mots. Summ. J., ECF Nos. 108, 168; BPD Mots. Summ. J., ECF Nos. 86, 167). The motions have been fully briefed and no hearing is necessary to their resolution. *See* Local Rule 105.5 (D. Md. 2014). For the reasons explained below, both motions will be denied.

**BACKGROUND**

In March 2007, a Maryland jury convicted both Brockington and Tyrone Gross, who is not a party to this lawsuit, of carjacking, conspiring to kidnap, kidnapping, and robbing Boykin

---

[1] Although this case was mistakenly filed with Boykin's last name misspelled ("Boykin*s*"), the court will use the correct spelling throughout this memorandum.

1

on the night of July 4, 2005, and the early morning of July 5, 2005.  (Pl.'s Opp. Summ. J., Ex. J, Verdict Tr., at H21–H22, H24–H25, ECF No. 173-10).  The jury found both men not guilty, however, of possession of a firearm, of various armed offenses, and of conspiring to murder Boykin.  (*Id.* at H20–H25.)  The Maryland Court of Special appeals subsequently affirmed Brockington's conviction.  (BPD Mot. Summ. J., Ex. 1, *State v. Brockington*, Maryland Court of Special Appeals Unpublished Op., Nov. 7, 2008, at 13, ECF No. 167-3).

The encounter that gave rise to Brockington's conviction and to this lawsuit culminated in the early morning hours of July 5, 2005, behind the vacant house at 1123 Myrtle Avenue, Baltimore.  (Boykin Mot. Summ. J., Ex. 1, Boykin Dep. 121–22, ECF No. 208-4; Boykin Mot. Summ. J., Ex. 2, Brockington Dep. 79–92, May 8, 2012, ECF No. 208-5.)  In depositions taken in this case, both Boykin and Brockington testified that Boykin used a handgun to fire at least two volleys of shots at Brockington:  He discharged the first salvo while both men were standing on the stairs leading to the back door of 1123 Myrtle Avenue, with Boykin standing above Brockington.  (Boykin Dep. 98, 105–06, ECF No. 208-4; Brockington Dep. 92, May 8, 2012, ECF No. 208-5).  And he fired the second salvo while the two were still behind the house but no longer on the back steps, this time with Boykin standing and Brockington on the ground.  (Boykin Dep. 111–15, ECF No. 208-4; Brockington Dep. 90, 93, May 8, 2012, ECF No. 208-5).  During that second volley, Boykin also paused to pivot and shoot into the house at 1123 Myrtle Avenue, before turning the gun again on Brockington.  (Boykin Dep. 115–18, ECF No. 208-4; Brockington Dep. 94–96, May 8, 2012, ECF No. 208-5).  After running out of bullets, Boykin fled the yard behind 1123 Myrtle Avenue.  (Boykin Dep. 118, ECF No. 208-4; Boykin Mot. Summ. J., Ex. 3, Brockington Dep. 109–10, May 23, 2013, ECF No. 208-6).  The events of that

evening left Brockington paralyzed from the waist down.

In most other respects, Boykin and Brockington's accounts of what occurred behind 1123 Myrtle Avenue diverge.  First, in his deposition, Boykin stated that he fired the first volley at Brockington blindly, under his left arm, while Brockington stood behind him.  (Boykin Dep 102, ECF No. 208-4.)  He did not know whether the first volley of shots wounded Brockington, only that Brockington screamed and fell from the steps as a result of the gunfire, pulling Boykin with him by a bandana he was holding over Boykin's eyes as a blindfold.  (Boykin Dep. 106, ECF No. 208-4.)  Brockington, for his part, testified that Boykin was facing him at the time of the first salvo, which struck his hand and what he characterized as his "middle."  (Brockington Dep. 94–96, 107, May 8, 2012, ECF No. 208-5.)  Second, Boykin stated that he fired his weapon into the house to keep Gross—at whom Boykin indicated he had shot prior to initiating the first salvo against Brockington and who then ran into the vacant house, screaming—at bay and that he ran out of ammunition immediately after shooting toward the home.  (Boykin Dep. 99–101, 115–16, ECF No. 208-5.)  Brockington, on the other hand, indicated that he never saw Gross behind 1123 Myrtle during the confrontation with Boykin, that he never saw Boykin shoot Gross, that he could not see what Boykin shot when Boykin discharged his weapon toward the vacant house, and that Boykin unleashed a third volley of shots on him after firing toward the house. (Brockington Dep. 140, May 8, 2012, ECF No. 208-5; Brockingon Dep. 39, 51–52, May 23, 2013, ECF No. 208-6.)  Third, and most importantly, Boykin testified that Brockington was armed with a handgun throughout the encounter behind 1123 Myrtle; after the first volley of shots, Boykin continued, he saw Brockington "crawling with the gun in his hand," face down on the ground.  (Boykin Dep. 108–09, ECF No. 208-4.)  Brockington, meanwhile, maintains that he

was unarmed behind 1123 Myrtle, that he fell onto his back after the first round of shots, and that, wounded and unable to sit up but still capable of moving his arms, he tried to block his face with his hands as Boykin fired the second salvo at him.  (Brockington Dep. 98–99, 113, May 8, 2012, ECF No. 208-5.)

The physical evidence is ambiguous:  Police responding to the scene recovered a handgun in a fenced yard two houses away from 1123 Myrtle Avenue.  (Boykin Mot. Summ. J., Ex. 9, Brown Dep. 92–93, 99, ECF No. 208-12.)  Although the police discovered shell casings from that weapon close to the location where they found Brockington lying, no physical evidence conclusively demonstrates that Brockington handled that weapon.  (Boykin Mot. Summ. J., Ex. 7, Wegster Dep. 43–44, ECF No. 208-10; Boykin Mot. Summ. J., Ex. 8, Lilly Dep. 132, ECF No. 208-12; Brockington Opp. Summ. J., Ex. F, Lansey Dep. 81–82, ECF No. 212-6.)

Brockington's excessive-force claim is premised on the latter volley(s) of shots alone; he long ago conceded that Boykin's initial use of force to subdue him was lawful.  *See, e.g.*, *Brockington v. Boykins*, 637 F.3d 503, 507 (4th Cir. 2011).  In denying a previous motion for summary judgment on Brockington's excessive-force claim, this court emphasized the "genuine dispute between the parties regarding the threat Brockington posed once he was initially wounded and on the ground."  (Mem. 3, ECF No. 178.)  That dispute remains unresolved, as explained below.

## ANALYSIS

**A.  Standard of Review**

Under Federal Rule of Civil Procedure 56(a), summary judgment should be granted "if

4

the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphases added).  Whether a fact is material depends upon the substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247–48.  "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).  The court must view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in his favor.  *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citation omitted); *see also Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Balt.*, 721 F.3d 264, 283 (4th Cir. 2013).  At the same time, the court must not yield its obligation "to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (citation and internal quotation marks omitted).

**B. Qualified Immunity**

Boykin and the BPD invoke the doctrine of qualified immunity, (Boykin Mem. Supp. Summ. J. 18, ECF No. 208-1; BPD Mem. Supp. Summ. J. 1, ECF No. 210-1), "which shields government officials from liability for civil damages, provided that their conduct does not violate clearly established statutory or constitutional rights within the knowledge of a reasonable person." *Meyers v. Balt. Cnty, Md.*, 713 F.3d 723, 731 (4th Cir. 2013).  Accordingly, officials receive no such protection where "'(1) the allegations underlying the claim, if true, substantiate a

violation of federal authority or constitutional right; and (2) this violation was a clearly established right of which a reasonable person would have known.'" *Occupy Columbia v. Haley*, 738 F.3d 107, 121 (4th Cir. 2013) (quoting *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 306 (4th Cir. 2006)). Where, as here, a plaintiff alleges that he was the victim of an official's use of excessive force, the constitutionality of that conduct is governed by the "'objective reasonableness' under the circumstances [of the officer's actions] 'without regard to [the officer's] underlying intent or motivation.'" *Brockington*, 637 F.3d at 506 (second alteration in original) (quoting *Graham v. Connor*, 490 U.S. 386, 390, 397 (1989)).

Boykin and the BPD have asserted this qualified-immunity argument before and lost. In an opinion affirming the previous denial of qualified immunity on the defendant's motion to dismiss Brockington's complaint, the Fourth Circuit explained that "[t]here is no indication that deadly force was necessary or reasonable once Brockington was initially shot, thrown to the ground by the force of the bullets, and wounded." *Brockington*, 637 F.3d 503, 507 (4th Cir. 2011). If the record developed on discovery confirmed those allegations, the Fourth Circuit held, then Boykin would not be entitled to the protection of qualified immunity. *Id.* at 507–08. Before the culmination of discovery, the defendants twice sought the protection of qualified immunity, which this court twice denied on the ground that factual disputes material to the reasonableness of Boykin's conduct remained unresolved. (*See* Order 1, ECF No. 121; Mem. 3, 7–8, ECF No. 178.)

The completion of discovery has not altered that conclusion, at least for the purposes of resolving a motion for summary judgment. Evaluating the record in the light most favorable to Brockington, as Rule 56 requires, reveals several lingering factual questions that a trial alone can

answer. Among other issues, a factfinder must evaluate the magnitude of Brockington's injuries after the first volley of shots; whether those injuries were apparent; and, above all, whether Brockington was armed or appeared to be armed during the encounter. If a jury resolves these questions in Brockington's favor, then it could conclude that Boykin's conduct violated the Constitution in a manner that a reasonable person in Boykin's circumstances would have recognized. *See Brockington*, 637 F.3d at 507.

Boykin and the BPD attempt to minimize the significance of those questions by highlighting the fruits of their most recent round of discovery, which they completed in the months following issuance of the order denying their previous motion for summary judgment. First, they emphasize Brockington's statement, in his deposition, that he carried a cellular telephone on the night of his encounter with Boykin. (Brockington Dep. 65–66, May 23, 2013, ECF No. 208-6.) Brockington held that phone in his hand when he first entered the yard behind 1123 Myrtle Avenue, but returned it to a clip on his belt before approaching Boykin. (Brockington Dep. 62–64, May 23, 2013, ECF No. 208-6.) Defendants argue that Boykin could have reasonably mistaken that phone for a weapon, given the poor quality of light behind 1123 Myrtle Avenue and the volatility of the confrontation between him and Brockington. (Boykin Mem. Supp. Summ. J. 25, ECF No. 208-1; BPD Reply Pl.'s Opp 4, ECF 220.) Yet there is no indication in the record that Boykin *saw* Brockington with an object in his hand when Brockington first entered the yard behind 1123 Myrtle, that he perceived an object on Brockington's hip during the encounter, or that the phone would have been visible to him once Brockington clipped it to his belt. To the contrary, Boykin testified that he *felt* a weapon pressed into his side when Brockington guided him from behind into the yard and that, at the time of the

7

second volley of bullets, Brockington held a gun in his hand, not that he was reaching for an object at his waist. (Boykin Dep. 98–99, 108–09, ECF No. 208-4.) Here, as elsewhere, Boykin and Brockington's divergent accounts cannot be reconciled on the basis of Boykin's mistaken perceptions. And where, as here, there is no evidence that an officer is aware of a particular circumstance, it is "irrelevant to the excessive force analysis," *Witt v. W. Va. State Police, Troop 2*, 633 F.3d 272, 275 n.* (4th Cir. 2011), because "reasonableness is determined based on the information possessed by the officer at the moment that force is employed," *Waterman v. Batton*, 393 F.3d 471, 477 (4th Cir. 2005).

Boykin and the BPD next argue that, even if Brockington were unarmed, Boykin's conduct was reasonable given that he was outnumbered by two men who had carjacked, robbed, and kidnapped him. (Boykin Mem. Supp. Summ. J. 23–24, ECF No. 208-1; BPD Reply Pl.'s Opp. 7–10, ECF No. 210-1.) That argument wrongly assumes that Gross' precise whereabouts at the time of the shooting are undisputed. But Brockington indicated that he did not see Gross behind 1123 Myrtle Avenue. (*See* Brockington Dep. 140, May 8, 2012, ECF No. 208-5; Brockingon Dep. 39, 51–52, May 23, 2013, ECF No. 208-6.) Even were it otherwise, the presence of two dangerous men in the yard close to Boykin would not as a matter of law justify Boykin's *continued* assault on Brockington if, as Brockington testified, Brockington lay on the ground visibly wounded and not visibly armed.

Last, Boykin and the BPD urge the court to discount Brockington's testimony on the ground that it is inconsistent with certain physical evidence. They emphasize (1) that police found a gun a short throw from Brockington's body; (2) that shell casings matching that weapon were found still closer to Brockington; and (3) that one bullet struck Brockington in the buttocks,

notwithstanding his testimony that he faced Boykin throughout the encounter. (Boykin Mem. Supp. Summ. J. 25–26, ECF No. 208-1; BPD Reply Pl.'s Opp. 4, 7, ECF No. 220.) As to the location of the gun, the defendants also emphasize alleged weaknesses in the testimony of Dr. Richard Callery, one of Brockington's medical experts. (Boykin Mem. Supp. Summ. J. 11–12, ECF No. 208-1; BPD Reply Pl.'s Opp. 2–3 , ECF No. 220.) In his deposition, Callery conceded certain errors and omissions in an earlier report, which opined that it was impossible for Brockington, once severely wounded, to have thrown the gun into the yard where it was found. (Boykin Mot. Summ. J., Ex. 5, Callery Dep. 72, 117–18, ECF No. 208-8.) At that deposition, Callery also modified his opinion somewhat, stating that it was improbable—rather than impossible—for Brockington to have made such a throw. (*Id.* at 148–49.)

The defendants' assessment of the physical evidence and Callery's testimony may well be good arguments before a jury. On summary judgment, however, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . .'" *McAirlaids, Inc. v. Kimberly-Clark Corp.*, 756 F.3d 307, 310 (4th Cir. 2014) (quoting *Anderson*, 477 U.S. at 255). Although it is true that "when documentary evidence '*blatantly* contradict[s]' a plaintiff's account 'so that no reasonable jury could believe it,' a court should not credit the plaintiff's version on summary judgment," *Witt*, 633 F.3d at 276–77 (alteration in original) (emphasis added) (quoting *Scott*, 550 U.S. at 380), the inconsistences the defendants highlight here do not clear that high bar.[2]

---

[2] Inconsistences in Boykin's account confirm that resolving the factual questions presented here requires a trial. For example, at the criminal trial that resulted in the conviction of Brockington and Gross, Boykin identified Gross, not Brockington, as the individual carrying a gun. (Boykin Dep. 162–63, ECF No. 208-4; *see also* Brockington Opp. Summ. J. Ex. B, Boykin Test.., at 108, ECF No. 212-2.) Boykin now characterizes his earlier sworn testimony as mistaken, (Boykin Dep. 162–63, ECF No. 208-4), but it will be for a jury alone to evaluate the cogency of that explanation. Similarly, all but one of Brockington's wounds may have been inflicted by bullets entering his body from the front, (*see* Boykin Mot. Summ. J., Ex. 8, Lilly Dep. 97–99, ECF No. 208-11), notwithstanding Boykin's deposition testimony that he fired multiple times on Brockington while Brockington was crawling face down on the

**C. Acting Under "Color of Law"**

The BPD seeks summary judgment on the ground that Boykin acted not under "color of law" but out of a personal desire to survive. (BPD Mem. Supp. Summ. J. 5–8, ECF No. 210-1.) Section 1983 authorizes civil liability only against individuals who act "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983. This "color of law requirement excludes from the reach of § 1983 all 'merely private conduct, no matter how discriminatory or wrongful,'" including purely personal pursuits. *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999)). In his deposition, Boykin stated that, when he fired on Brockington, "I was just trying to survive." (Boykin Dep. 160, ECF No. 208-4.) Invoking Benedict Spinoza, Sigmund Freud, and Charles Darwin—but notably not case law—the BPD characterizes this "survival instinct" as "the quintessential personal pursuit of the highest order," such that conduct motivated by that instinct is beyond the scope of § 1983. (BPD Mem. Supp. Summ. J. 6–7, ECF No. 210-1.)

The BPD terms Boykin's self-reported subjective motivation as "dispositive" of whether he acted under "color of law." (BPD Mem. Supp. Summ. J. 8, ECF No. 210-1.) Not so. "[T]he Supreme Court has *not* opted for an objective or subjective test, but simply for a look at the totality of circumstances that might bear on the question of the nexus between the challenged action and the state." *Rossignol*, 316 F.3d at 523 n.1 (emphasis added).

As explained in a previous Memorandum, (ECF No. 178), the totality of the

---

ground, (Boykin Dep. 108--09, ECF No. 208-4). These concerns are more than academic: Although Boykin testified at the criminal trial that Gross was carrying a weapon throughout their encounter, (*see, e.g.*, Boykin Test. 82–83, 85, 93, 97), the jury acquitted both men of several weapons-related charges, (Pl.'s Opp., Ex. J., at H20–H25, ECF No. 173-10.) A jury might well refuse to credit portions of Boykin's testimony again, even at the lower standard of proof applicable to civil proceedings.

circumstances here indicates that Boykin acted under color of law in his confrontation with Brockington. "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988). Here, Boykin reported in his deposition that he identified himself as a police officer to Brockington, before he arrived at 1123 Myrtle Avenue, in an unsuccessful effort "so scare [Brockington] off." (Boykin Dep. 160, ECF No. 208-4.) And he ultimately shot Brockington with his state-issued weapon, which BPD regulations required him to carry while in the city, mandated that he use in a manner consistent with his training, and prohibited him from carrying without his police credentials. (Boykin Dep. 169–70, 182, ECF No. 208-4.) Reading the record in the light most favorable to Brockington, as Rule 56 requires, these circumstances are enough to preclude summary judgment. *See Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 872 (4th Cir. 1989).

## CONCLUSION

For the reasons stated above, the defendants' motions for summary judgment will be denied.

A separate order follows.

<u>September 24, 2014</u>　　　　　　　　　　　　<u>　　　　/s/　　　　　</u>
Date　　　　　　　　　　　　　　　　　　　　Catherine C. Blake
　　　　　　　　　　　　　　　　　　　　　　United States District Judge